# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BERTA BOWSER | * | CIVIL ACTION NO. 05-0421 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Berta Bowser, born March 10, 1955, filed an application for a period of disability and disability insurance benefits on October 15, 2001, alleging disability as of September 14, 2001, due to high blood pressure, diabetes, anemia, and a bad heart.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from University Medical Center ("UMC") dated January 5, 2001 to April 23, 2002**. On January 5, 2001, claimant was seen for diabetes mellitus, hypertension, and obesity. (Tr. 140). She was 5 feet 2 inches tall, and weighed 232 pounds. Her blood pressure was 190/90. It was noted that she was compliant with her medications, but not diet and exercise. The assessment was poorly controlled diabetes and hypertension.

On March 19, 2001, claimant complained of headaches and occasional blurred vision. (Tr. 137). Her blood pressure was 209/110, and weight was 226 pounds. The assessment was uncontrolled hypertension and diabetes mellitus.

Claimant failed to show for several appointments. (Tr. 125, 132, 133, 134, 135, 138, 139).

On October 7, 2001, claimant was seen for left hip pain after she had twisted it three weeks prior. (Tr. 121-22). It was noted that she was obese. (Tr. 122). On examination she had no bony deformities or instability of the left hip. She had equal strength and equal patellar reflexes with no focal neurological deficits. The assessment was an SI joint sprain.

On October 22, 2001, claimant complained of lower back pain, sweating, tremor, weakness and nausea, and anemia. (Tr. 120). The assessment was diabetes mellitus with a hypoglycemic episode, poorly controlled hypertension, and back/hip pain.

At a followup visit on January 14, 2002, claimant's blood pressure was 170/87, and she weighed 228 pounds. (Tr. 111). The assessment was uncontrolled diabetes and hypertension, anemia, and hyperlipidemia. Dietary modifications and exercise were prescribed.

On February 22, 2002, claimant complained that her hypertension and blood sugar were out of control, and her medications were not helping. (Tr. 106). Her blood pressure was 204/120. She also complained of blurry vision. The assessment was hypertension and hyperglycemia.

On April 9, 2002, claimant complained of blurry vision, headaches, and burning in her feet. (Tr. 96). Her blood pressure was 184/119, and weight was 229 pounds. The assessment was uncontrolled diabetes and hypertension.

**(2) Residual Functional Capacity ("RFC") Assessment dated July 1, 2002**. The state agency medical consultant determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 142). She could stand/walk and sit about 6 hours in an 8-hour workday. She had unlimited push/pull ability. It was

noted that claimant was obese. The examiner stated that claimant's main problem was related to her myofascial lumbar pain and obesity, which was aggravating her low back pain. (Tr. 143). Her allegations were considered credible. (Tr. 146).

**(3) Records from UMC dated June 11, 2002 to January 14, 2003**. On June 11, 2002, claimant complained that her blood pressure was always high. (Tr. 169). On examination, her blood pressure was 217/112. It was noted that she had noted that she had not taken Norvasc. (Tr. 166). The assessment was diabetes mellitus, poor control, and uncontrolled hypertension. (Tr. 169).

On July 23, 2002, claimant complained of right knee and leg pain and angina. (Tr. 159). An ECG was abnormal with non-specific T Wave changes. (Tr. 160, 162). A chest x-ray dated November 12, 2002, showed slight cardiomegaly. (Tr. 156).

On December 17, 2002, claimant's blood pressure was 159/99, and her weight was 219 pounds. (Tr. 155). The assessment was diabetes mellitus, needs better control, and hypertension, improved, needs better control.

On January 14, 2003, claimant's blood pressure was 191/99, and her weight was 220 pounds. (Tr. 152). She stated that she was taking her medications as directed. The assessment was uncontrolled diabetes and hypertension, hyperlipidemia, and thyromegaly.

**(4) Consultative Examination by Dr. Kenneth A. Ritter, Jr., dated January 22, 2003**. Claimant reported high blood pressure, diabetes mellitus, anemia from heavy periods, and a heart murmur. (Tr. 170). Additionally, she complained of occasional blurred vision due to blood sugar fluctuations, occasional headaches, rare chest pains, nocturnal gagging, nausea and vomiting sour water every other morning, frequent low abdominal cramping, heartburn symptoms, nocturia 3 to 4 times nightly, and intermittent low back and right knee pain. (Tr. 170-71). Her medications included Trandolapril, HCTZ, Glucophage, and Glucotrol. (Tr. 170). She also had prescriptions for Lipitor and Aspirin, but had never filled them.

On examination, claimant was 5 feet 2 inches tall, and weighed 218 pounds. (Tr. 171). Dr. Ritter noted that she was obese. Her blood pressure was 170/118. Her heart had sinus rhythm with grade 2/6 systolic murmur.

Claimant's extremities were normal. She had no ankle swelling; full range of motion without any redness, heat, tenderness, or swelling of any joint; negative straight leg raises bilaterally; normal gait and station, and normal dorsalis pedis pulses. (Tr. 171-72). Her neurological examination was intact, with normal DTR's, strength, and sensation. (Tr. 172).

Dr. Ritter's impression was hypertension with very elevated blood pressure on examination, which had never been very well controlled according to medical

records; adult onset diabetes mellitus, which apparently was under very poor control, and anemia, of which he could find no evidence at that time. He noted that claimant was on very weak anti-hypertensive medications at that time.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant's ability to lift, carry, stand, walk, sit, push, and pull were not affected by her impairment. (Tr. 173-74). He found that she could perform all postural activities frequently. (Tr. 174). She had no manipulative, visual/communicative, or environmental limitations. (Tr. 175-76).

**(5) Records from UMC dated February 2, 2003 to May 13, 2003**. On February 11, 2003, claimant complained of blurred vision and polyuria. (Tr. 195). Her blood pressure was 174/103, and her weight was 221 ½ pounds. The impression was uncontrolled diabetes and hypertension.

On March 25, 2003, claimant's blood pressure was 170/90 and weight was 220 pounds. (Tr. 188). It was noted that she was not taking Avandia every day, and was trying to "stretch" samples. She was not diet compliant, and had a poor understanding of nutrition. She did not fill her Norsac. The assessment was uncontrolled diabetes and hypertension. She was referred to a nutrition class and prescribed exercise for 20 minutes five days a week.

On April 23, 2003, claimant's blood pressure was 164/88, and weight was 227 pounds. (Tr. 185). She stated that she was taking all medications as directed. She had no complaints.

On May 13, 2003, claimant complained of pain in the salivary glands and right knee. (Tr. 179). Her blood sugar level was 221. Her blood pressure was 152/83, and she was obese at 229 pounds. The assessment was diabetes mellitus, not well controlled, hypertension, better controlled, salivary gland tenderness, likely stones, thyromegaly without nodules, and microcytic anemia.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on May 22, 2003, claimant was 48 years old. (Tr. 220). She testified that she was 5 feet 2 inches tall, and weighed 210 pounds. She stated that she had been losing weight steadily because of diabetes. (Tr. 221). She reported that she had just started taking insulin injections.

Claimant testified that she had completed high school. She stated that she had last worked on September 14, 2001 as a cook at a nursing home. (Tr. 222). Prior to that, she had worked in housekeeping. (Tr. 223). She stated that she had quit working because she had bad headaches, leg pain, burning in the bottom of her feet, and nausea when she became overheated. (Tr. 223-24).

Regarding complaints, claimant testified that she had bad headaches every morning, which caused nausea and vomiting. (Tr. 224-25). She stated that she had blurred vision daily. (Tr. 224). Additionally, she complained of weakness and of being forgetful. (Tr. 225-26, 234). She also said that her medications made her drowsy and weak. (Tr. 232).

As to limitations, claimant reported that she could lift and carry 10 to 20 pounds. (Tr. 226). She stated that she could stand for about 30 minutes at a time. (Tr. 227). She testified that she had problems with sitting because of back pain. She said that she could walk for about a block before her feet started burning. (Tr. 227-28). Additionally, she complained that her arms and hands became tired and started hurting when she combed her hair. (Tr. 228).

Regarding activities, claimant testified that she tried to do a little housework, including mopping and rinsing dishes. (Tr. 229). She stated that she rested most of the day. (Tr. 230). She reported that her relatives visited her sometimes. She said that she drove about twice a week to the store or the doctor. (Tr. 231).

**(7) Administrative Hearing Testimony of Lionel Bordelon, Vocational Expert ("VE")**. Mr. Bordelon described claimant's past work as a cook as medium with a specific vocational preparation of 5, and a housekeeper as light with an SVP of 3. (Tr. 236). The ALJ posed a hypothetical in which he asked the VE to assume

a claimant of the same age, education, and work experience, who had the RFC to perform light work that did not require climbing ladders, ropes, or scaffolds; required only occasional climbing of ramps; did not require climbing of stairs; required only occasional balancing, stooping, kneeling, crouching, and crawling, and did not require working around hazards such as heights or dangerous machinery. (Tr. 236-37). In response, the VE stated that claimant could not do her past relevant work, but could work as a weigher, measurer, or checker, of which there were 72,321 positions nationally and 997 statewide, 20% of which would fit the hypothetical, and assembler, of which there were 1,233,669 positions nationally and 6,263 statewide, 25% of which would fit the hypothetical. (Tr. 237). When the ALJ modified the hypothetical for sedentary work, Mr. Bordelon testified that it would reduce the weigher, measurer, and checker positions from 20% to 10%, and the assembler positions from 25% to 15%. When the ALJ asked whether any jobs would be available if the evidence showed that claimant was unable to work eight hours a day, five days a week, the VE testified that there would not. (Tr. 238).

Claimant's attorney asked whether a claimant who had episodic headaches of such severity that she would be unable to stay throughout the 8-hour day or be absent or off task for several hours more than a couple of times a month. In response, the VE confirmed that such claimant would be unable to maintain employment. When

claimant's attorney asked whether blurred vision would affect any of the identified positions, Mr. Bordelon testified that it would affect the assembler positions, but probably not as much for the weigher, measurer, or checker positions.  (Tr. 239).

**(8) The ALJ's Findings**.  Claimant argues that: (1) the ALJ failed to properly evaluate her obesity in combination with her other medically-determined impairments as required under SSR 02-01p, resulting in Steps 3 through 5 of the evaluation process being flawed; (2) the ALJ erred in determining claimant's residual functional capacity.  Because I find that the ALJ erred in failing to consider the effect of claimant's obesity on her impairments, I recommend that this matter be **REMANDED** for further proceedings.

In the first argument, claimant asserts that the ALJ erred in failing to consider the combined effects of her obesity with her hypertension, diabetes mellitus, and low back pain in accordance with SSR 02-1p.  Prior to 1999, the Social Security regulations included a listing for obesity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09 (1999).[1]  On August 24, 1999, the Commissioner published a final rule, deleting § 9.09 for obesity.  64 FR 46122 (1999).  This listing was deleted because experience

---

[1]The criteria for the musculoskeletal impairment under § 9.09 was a "[h]istory of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine."

showed that the criteria in § 9.09 were not appropriate indicators of listing-level severity. SSR 02-01p (September 12, 2002). The final rule was effective on October 25, 1999. *Id.*

Even though the listing at 9.09 was deleted, obesity is still addressed in the listings. SSR 02-01p. Paragraphs were added to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *Id.* Section 1.00Q, which was added to the musculoskeletal listing, and § 4.00F[2], which was added to the cardiovascular listing, state that obesity is considered to be a medically determinable impairment, and reminds adjudicators to consider its effects when evaluating disability. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 §§

---

[2]This section was amended by 71 FR 2312-01 and redesignated as § 4.00I1 to incorporate additional guidance from SSR 02-1p. Section 4.00I1, effective April 13, 2006, provides as follows: What effect does obesity have on the cardiovascular system and how will we evaluate it? Obesity is a medically determinable impairment that is often associated with disorders of the cardiovascular system. Disturbance of this system can be a major cause of disability if you have obesity. Obesity may affect the cardiovascular system because of the increased workload the additional body mass places on the heart. Obesity may make it harder for the chest and lungs to expand. This can mean that the respiratory system must work harder to provide needed oxygen. This in turn would make the heart work harder to pump blood to carry oxygen to the body. Because the body would be working harder at rest, its ability to perform additional work would be less than would otherwise be expected. Thus, the combined effects of obesity with cardiovascular impairments can be greater than the effects of each of the impairments considered separately. We must consider any additional and cumulative effects of obesity when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a listed impairment), and when we assess your residual functional capacity.

1.00Q, 4.00F.  These provisions also remind adjudicators that the combined effects of obesity with musculoskeletal and cardiovascular impairments can be greater than the effects of each of the impairments considered separately.  *Id.*  Therefore, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must* consider any additional and cumulative effects of obesity."  (emphasis added).  *Id.*

A review of the decision reflects that nowhere did the ALJ refer to § 1.00Q or § 4.00F, nor does the record reflect that the ALJ considered the combined effects of obesity with claimant's musculoskeletal or cardiovascular impairments as required by the regulations.  The medical records from UMC, the state agency medical consultant, and Dr. Ritter consistently reflect that claimant was "obese."  (Tr. 122, 140, 142, 171, 179 ).  The records also indicate that claimant had low back and right knee pain (Tr. 120, 122, 159, 179), as well as poorly controlled hypertension (Tr. 96, 106, 120, 137, 140, 152, 169, 172, 185, 188, 195, 212).  In fact, the medical consultant noted that claimant's main problem was "related to her *myofascial lumbar pain and obesity, which is aggravating her LBP*."  (emphasis added).  (Tr. 143).

Here, the ALJ failed to consider "any additional and cumulative effects of obesity" as required by §§ 1.00Q, 4.00F, and SSR 02-1p. Thus, the ALJ erred in assessing claimant's impairments.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to assess claimant's impairments in light of her obesity and develop the record by conducting an adequate hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 10TH day of February, 2006, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **BERTA BOWSER** | * | **CIVIL ACTION NO. 05-0421** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## JUDGMENT

This matter was referred to United States Magistrate Judge C. Michael Hill for Report and Recommendation. No objections have been filed. The Court concludes that the Report and Recommendation of the magistrate judge is correct and therefore adopts the conclusions set forth therein.

Accordingly, **IT IS ORDERED, ADJUDGED AND DECREED** that the Commissioner's previous administrative decision is **REVERSED** and this action is **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).[3] This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to assess

---

[3]A fourth sentence remand constitutes a "final judgment" that triggers the filing period for an EAJA fee application. *Shalala v. Schaeffer*, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); *Freeman v. Shalala*, 2 F.3d 552 (5th Cir. 1993).

claimant's impairments in light of her obesity and develop the record by conducting an adequate hearing.

Lafayette, Louisiana, this ___ day of _____, 2006.

_____
TUCKER L. MELANÇON
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **BERTA BOWSER** | * | **CIVIL ACTION NO. 05-0421** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## JUDGMENT

This matter was referred to United States Magistrate Judge C. Michael Hill for Report and Recommendation. After an independent review of the record, including the objections filed herein, this Court concludes that the Report and Recommendation of the Magistrate Judge is correct and adopts the findings and conclusions therein as its own.

Accordingly, **IT IS ORDERED, ADJUDGED AND DECREED** that the Commissioner's previous administrative decision is **REVERSED** and this action is **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).[4] This includes, but does not limit, sending the

---

[4]A fourth sentence remand constitutes a "final judgment" that triggers the filing period for an EAJA fee application. *Shalala v. Schaeffer*, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); *Freeman v. Shalala*, 2 F.3d 552 (5th Cir. 1993).

case to the hearing level with instructions to the Administrative Law Judge to assess claimant's impairments in light of her obesity and develop the record by conducting an adequate hearing.

Lafayette, Louisiana, this ___ day of _____, 2006.

_____
TUCKER L. MELANÇON
UNITED STATES DISTRICT JUDGE